UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON CROSBY,<br><br>             Petitioner,<br><br>     v.<br><br>A. ARTHUR, Warden,<br><br>             Respondent. | Case No. CV 16-4121-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## <u>INTRODUCTION</u>

On July 8, 2016, petitioner Brandon Crosby filed a First Amended Petition for Writ of Habeas Corpus by a Person in State Custody ("First Amended Petition" or "FAP"). Petitioner challenges his October 24, 2014 conviction in the Los Angeles County Superior Court for assault of a peace officer causing great bodily injury.

The First Amended Petition purports to raise five grounds for relief. Two of the grounds claim the trial court erred during petitioner's waiver of counsel hearing. The other grounds are difficult to decipher, although they also reference petitioner's

waiver of counsel.

For the reasons discussed below, petitioner's claims do not merit habeas relief. Accordingly, the FAP will be denied with prejudice.

## II.

## **STATEMENT OF FACTS**[1]

On May 28, 2014, Los Angeles County Deputy Sheriff Keelan Chan detained petitioner at the Wilmington Train Station for fare evasion. Petitioner resisted a pat down search and punched the deputy in the face, breaking his nose.

Security Assistant Iris Avalos saw Deputy Chan fall and hit a metal stairway with blood gushing out his mouth. Avalos radioed for help as petitioner ran to a Denny's restaurant. Responding to the call, Sheriff's Deputies Aguiano and Atilano found petitioner hiding in a bathroom stall. Petitioner charged and kicked the deputies as he was "extracted" from the bathroom.

In an interview conducted in compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), petitioner admitted punching Deputy Chan. Petitioner said that he "two pieced" the deputy – street slang for a one-two punch in rapid succession.

A month before trial, the trial court granted petitioner's motion pursuant to *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), and discharged the deputy public defender. Petitioner defended on the theory that he resisted arrest but never hit Deputy Chan. The jury returned a guilty verdict on count 1 for assault on a peace officer and acquitted on counts 2 and 3 for resisting an officer (Deputies Aguiano and Atilano). At the sentencing hearing, the trial court denied petitioner's request to withdraw the *Faretta* waiver and sentenced

---

[1] The facts set forth are drawn largely verbatim from the California Court of Appeal's decision on direct appeal. Lodged Doc. ("LD") 7 at 2. Such statement of facts is presumed correct. 28 U.S.C. § 2254(e)(1); *Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

petitioner to 17 years in state prison.

## III.

## **PROCEEDINGS**

On October 6, 2014, following a trial, a jury found petitioner guilty of assault on a police officer (Cal. Penal Code § 245(c)) and found true a great bodily injury enhancement (Cal. Penal Code § 12022.7(a)). LD 1 at 134-35, 180. The trial court found that petitioner had suffered a prior violent felony conviction (Cal. Penal Code § 667(a)(1)) and a prior prison term (Cal. Penal Code § 667.5(b)). *Id*. The trial court sentenced petitioner to 17 years in prison. *Id*.

Petitioner, then represented by counsel, appealed the judgment and sentence, raising three arguments: (1) the failure to advise petitioner of the nature of the charges against him and the potential penal consequences prior to accepting his *Faretta* waiver was not harmless error; (2) the trial court improperly denied petitioner's request to withdraw his *Faretta* waiver at the sentencing hearing; and (3) a sentencing error. LD 4. On October 27, 2015, the California Court of Appeal, in a reasoned decision, struck the one-year prior prison term enhancement and so reduced the sentence to 16 years, but otherwise affirmed the judgment. LD 7.

Petitioner filed a petition for rehearing in the Court of Appeal, which was denied without comment on November 16, 2015. LD 8-9.

Petitioner then filed a petition for review in the California Supreme Court, arguing there was split authority in the California Court of Appeal on whether a *Faretta* advisement must include penal consequences and the nature of the charges. LD 10. The California Supreme Court summarily denied the petition for review on January 13, 2016. LD 11.

On June 10, 2016, petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). The court dismissed the Petition with leave to amend on June 15, 2016 on the bases that: (1) it was unclear what claims petitioner

was raising; (2) the court was unable to discern whether petitioner had exhausted his state remedies; and (3) assuming the claims were some version of those stated in the request for relief, there was no federal constitutional basis for the claims. Petitioner filed the First Amended Petition on July 8, 2016.

## IV.
## **STANDARD OF REVIEW**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court generally looks to the last reasoned state court decision as the basis for the state court's justification. *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018) ("the federal court should 'look through' the unexplained decision to the last related state-court decision" and "presume that the unexplained decision adopted the same reasoning"). Here, the California Court of Appeal's opinion on February 16, 2012 stands as the last reasoned decision.

//
//

V.

DISCUSSION

A. **Petitioner Is Not Entitled to Relief on His *Faretta* Claim**

Petitioner, in Grounds One and Three, raises a *Faretta* claim. In Ground One, petitioner states "the issue presented [] is whether a knowing and intelligent waiver of [a] defendant's right to counsel requires a showing that the defendant knows the maximum sentence he is facing." FAP at 5.[2] In Ground Three, petitioner states he did not receive a copy of the information before he waived his right to counsel. *Id*. at 7. Taken together, petitioner appears to argue either, or perhaps both, that: (1) a trial court is required to provide a particularized advisement to a defendant during a *Faretta* hearing and did not here; or (2) petitioner's waiver of his right to counsel was not knowing and intelligent because the trial court did not inform petitioner of the maximum sentence he faced or provide him a copy of the information at the hearing.

1. **It Is Unnecessary for the Court to Address *Teague***

Respondent contends petitioner's claim is barred by *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). In *Teague*, the Supreme Court held that a new rule of constitutional law generally cannot be applied retroactively on collateral review. *Whorton v. Bockting*, 549 U.S. 406, 416, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007). Rather, it is generally only available to cases open on direct review. *Id.* "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government" or "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301; *accord Stringer v. Black*, 503 U.S. 222, 228, 112 S. Ct. 1130, 117 L. Ed. 2d 367 (1992). *Teague* also applies where a habeas claim would

---

[2] For ease of reference, the court refers to the page numbers in the FAP as enumerated under CM/ECF. Page five of the FAP is blank on CM/ECF.

5

require the announcement of a new rule. *See Saffle v. Parks*, 494 U.S. 484, 487-88, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990) ("[O]n collateral review, we must first determine whether the relief sought would create a new rule under . . . *Teague*").

Because the court denies the FAP on the merits, it is not necessary to address respondent's *Teague* argument. *See Leavitt v. Arave*, 383 F.3d 809, 816 (9th Cir. 2004) (the *Teague* argument only has to be addressed if the district court granted the habeas petition).

### 2. **Clearly Established Law Does Not Require a Particularized Warning**

To the extent petitioner is arguing that the Constitution requires a trial court to provide particularlized warnings to a criminal defendant during a pre-trial *Faretta* hearing, the Court of Appeal's denial is not contrary to clearly established federal law.

The Sixth Amendment provides a criminal defendant the right to waive assistance of counsel and represent himself. *Faretta*, 422 U.S. 806. The waiver must be knowing and intelligent, and the request must be timely and unequivocal. *Id.* at 835; *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007). But the Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004); *Arrendondo v. Neven*, 763 F.3d 1122, 1130 (9th Cir. 2014). A trial court must warn a criminal defendant of the hazards ahead – the dangers and disadvantages of self-representation – but what information is required depends on "a range of case-specific factors, including . . . the complex or easily grasped nature of the charge [] and the stage of the proceeding." *Tovar*, 541 U.S. at 88.

Accordingly, to the extent petitioner is arguing that a trial court is required to provide a specific script, the Court of Appeal's denial is not contrary to clearly

established law.

### 3. Petitioner Was Aware of the Possible Punishments

Petitioner also suggests his waiver was not knowing or intelligent because the court did not inform him of his maximum sentence during the *Faretta* colloquy. "[I]n a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Tovar*, 541 U.S. at 92. In the FAP, plaintiff did not actually plead that he did not knowingly and intelligently waive his right to counsel. Petitioner merely raised the question of whether a trial court must inform a defendant of the maximum punishment he faced in order for a waiver to be knowing and intelligent, and alleges that he did not receive his information when he waived his right to counsel. *See* FAP at 5, 7. But petitioner never actually alleged he was unaware of the risks of self-representation, including the possible punishments. As such, petitioner's claim fails.

Moreover, petitioner has not shown he would be entitled to relief even if he had alleged his waiver was not made knowingly and intelligently because he was unaware of the punishment he faced. As discussed above, *Faretta* requires that a defendant be made aware of the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835. Subsequently, in *Tovar*, the Supreme Court held that for defendants seeking self-representation for purposes of entering a plea, the trial court had satisfied its constitutional requirement of making the defendant aware of the hazards ahead by informing him "of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Tovar*, 541 U.S. at 81. The Supreme Court explained that the "'law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the

defendant may not know the *specific detailed* consequences of invoking it.'" *Id*. at 92 (quoting *U.S. v Ruiz*, 536 U.S 622, 629, 122 S. Ct. 2450; 153 L. Ed. 2d 586 (2002)).

In *Arrendondo*, the Ninth Circuit determined that *Tovar* complemented *Faretta*, finding that *Faretta* emphasized the "tactical liabilities of going to trial without trained counsel" while *Tovar* ensured defendants "understood the magnitude of the loss they face." *Arrendondo*, 763 F.3d at 1131. In other words, *Faretta* discussed knowledge as it relates to the probability of conviction and *Tovar* concerned knowledge of the consequences of conviction. *Id*. "Taken together, [*Faretta* and *Tovar*] outline the minimum necessary knowledge for a defendant to calculate knowingly and intelligently the risk of proceeding to trial pro se." *Id*. The Ninth Circuit then acknowledged that *Tovar* concerned an uncounseled guilty plea but concluded the requirement that a defendant understand the possible punishments extended to the uncounseled trial context. *Id*. at 1132. This court is bound by the Ninth Circuit's determination that to not extend *Tovar* to waivers in the trial context would be an unreasonable interpretation of clearly established federal law. *See id.*; *Lair v. Bullock*, 697 F.3d 1200, 1206-07 (9th Cir. 2012) (district courts are bound by circuit authority unless there is an intervening, irreconcilable Supreme Court decision); *Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007); *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).

Here, the Court of Appeal noted that the Supreme Court has not directly answered the question of whether a defendant seeking to waive his right to counsel before trial must be advised of the full range of punishments he faces. LD 7 at 3. This was not contrary to clearly established federal law. The Court of Appeal then, relying on a state court case discussing *Tovar*, acknowledged the requirement that a defendant be advised of his range of possible punishments during a waiver hearing at the *plea* stage but found that such an advisement was difficult to apply at the *trial*

stage because of the difficulties in predicting what the counts the defendant would be convicted of. *See id*. at 3-4 (discussing *People v. Jackio*, 236 Cal. App. 4th 445, 186, Cal. Rptr. 3d 662 (2015)). Instead, the Court of Appeal, without stating that a trial court had an affirmative obligation, agreed with other California state courts that it would be more reasonable to require a trial court to advise a defendant of the maximum punishment that could be imposed. *See id*. at 3. While this standard differs slightly from that proffered in *Tovar*, it is not contrary to *Tovar* given that *Tovar* stated that what information must be provided was case-specific and dependent on the stage of the proceedings. *See Tovar*, 541 U.S. at 88.

Moreover, consistent with *Tovar*, the Court of Appeal found it was sufficient for petitioner to have knowledge of his possible punishments. *See* LD 7 at 4; *see also McCormick v. Adams*, 621 F.3d 970, 979 (9th Cir. 2010) (even if the trial court had conducted a defective colloquy, a "defective waiver colloquy will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver") (internal quotations and citation omitted). In other words, rather than focus on what the trial court said, the question was what petitioner understood. *See id*.

Here, the Court of Appeal reasonably determined that the totality of the facts demonstrated petitioner was aware of the charges against him and the possible punishments he faced based on the fact he had a copy of the information and he had reviewed the *Faretta* form with his counsel. Petitioner does not directly dispute his receipt of the information, but argues the record does not show this. At the August 26, 2014 *Faretta* hearing, the trial court granted petitioner's request to proceed pro se and ordered counsel to provide petitioner with his preliminary hearing transcript, police reports, and discovery before he was sent back to jail. LD 3 at A6. On September 29, 2014, the first day of trial, petitioner claimed he never received the documents, but former counsel represented that she made the copies as ordered and

provided them to either the bailiff or to the Sheriff's department. *Id*. at B1, 1-7. The court then ordered the prosecutor to copy the discovery and provide it to petitioner that day. *Id*. at 9-10. The Court of Appeal determined petitioner had a copy of the information, which listed the charges and maximum punishment on each count. LD 7 at 4.

Based on this record, the Court of Appeal's finding that petitioner received a copy of the information was reasonable, although it is not clear when petitioner first received it. In any event, there are other indications petitioner knew the punishment he faced. When arguing he did not have his legal files, petitioner did not represent to the trial court that he did not know the charges and possible consequences. At one of the September 29, 2014 hearings, after petitioner had waived counsel, the court inquired regarding settlement discussions, and the prosecutor advised the court in petitioner's presence that petitioner faced a maximum of 21 years and eight months in prison. LD 3 at 15. As the Court of Appeal recognized, petitioner did not claim surprise when the prosecutor stated the maximum punishment petitioner faced, nor did he then try to revoke his *Faretta* waiver. *Id.*; LD 7 at 4. The Court of Appeal thus reasonably concluded petitioner was aware of the maximum punishment he faced, and "waived his right to counsel with eyes open." LD 7 at 4. Indeed, as discussed above, petitioner does not even expressly argue that he lacked knowledge, but merely argues that the information was not provided and the court did not state the maximum punishment.

Accordingly, petitioner is not entitled to habeas relief on his *Faretta* claim. The Court of Appeal's decision was neither contrary to clearly established federal law nor an unreasonable determination of the facts.[3]

---

[3] Respondent contends that, in any event, the Court of Appeal correctly determined any error was harmless. Answer at 15. Respondent argues that the Court of Appeal found that any error would be harmless because, given the overwhelming evidence of guilt, petitioner would have been convicted even if

10

**B.      Grounds Two, Four, and Five Fail to State a Claim**

The remainder of petitioner's claims – Grounds Two, Four, and Five – are more difficult to decipher and must be dismissed for failure to state a claim. A petitioner must "'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005) (quoting Habeas Corpus Rule 2(c)). "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (citation omitted). Here, Grounds Two, Four, and Five are so unclear that they do not even rise to the level of being conclusory claims.

In Ground Two, petitioner writes that it is the "same" as Ground One and states that the appointment of counsel for post-trial proceedings may have resulted in a different sentence. *Id.* at 5-6. At first blush this suggests petitioner might be arguing that the trial court erred when it denied his request for counsel during the post-trial proceedings. But this interpretation is undercut by petitioner's statement that the claim is the "same" as Ground One. It may be that with Ground Two petitioner is simply offering an additional argument to support his *Faretta* claim. Accordingly, Ground Two is dismissed as vague. Further, to the extent Ground Two may be interpreted as a claim of denial of a right to counsel during sentencing, it is denied as unexhausted. *See* 28 U.S.C. § 2254(b)(1)(A) (federal habeas relief

---

represented at trial. *Id.* Respondent mischaracterizes the Court of Appeal decision. The Court of Appeal in fact concluded any error was harmless because petitioner would have proceeded to trial without counsel even if warned about the maximum possible sentence at the *Faretta* hearing. LD 7 at 5. Regardless, had petitioner actually not made a knowing waiver, harmless error is inapplicable to save a Sixth Amendment violation. *See Frantz v. Henry*, 533 F.3d 724, 734 (9th Cir. 2008) (Sixth Amendment violation is structural and not susceptible to harmless error review); *U.S. v. Erskine*, 355 F.3d 1161, 1170 n12 (9th Cir. 2004). Accordingly, the court does not rely on harmless error in denying petitioner's claim for relief.

11

shall not be granted unless state prisoner first exhausts his state court remedies); *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam); *Libberton v. Ryan*, 583 F.3d 1147, 1164 (9th Cir. 2009) (to satisfy the exhaustion requirement, petitioner must "fully and fairly" present each claim to the highest state court). Petitioner did not raise a claim of denial of the right to counsel at sentencing in his petition for review. *See* LD 10.

In Grounds Four and Five, petitioner simply copies footnotes two and four from the Court of Appeal decision. *Compare* FAP at 7-8 and LD 7 at 4 n.2, 7 n.4. The footnotes do not state a claim. Indeed, Ground Four (footnote two of the Court of Appeal decision) supports dismissal of plaintiff's *Faretta* waiver claim. Neither ground identifies any basis for relief nor states any facts to support a ground for relief.

Accordingly, Grounds Two, Four, and Five must be dismissed for failure to state a claim.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered denying the First Amended Petition and dismissing this action with prejudice.

DATED: September 19, 2019

SHERI PYM
United States Magistrate Judge

12